**ANDERSON & KARRENBERG**
Thomas R. Karrenberg (#3726)
Jon V. Harper (#1378)
50 West Broadway, Suite 700
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
Email: tkarrenberg@aklawfirm.com
Email: jharper@aklawfirm.com

**LAW OFFICES OF MARC HENZEL**
Marc S. Henzel
273 Montgomery Avenue
Bala Cynwyd, PA 19004
Telephone: (610) 660-8000
Fax: (405) 660-8080
mhenzel@henzellaw.com

**FEDERMAN & SHERWOOD**
William B. Federman, Esq.
10205 North Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SANJAY ISRANI, derivative on behalf of Nominal Defendant Energy*Solutions*, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> R. STEVEN CREAMER, et al., <br><br> Defendant. | **PLAINTIFF'S SUPPLEMENTAL BRIEF** <br><br> Case No. 2:10-cv-00849-TC <br><br> Judge Tena Campbell |

Plaintiff Sanjay Israni hereby respectfully submits this brief in response to the Court's September 7, 2012 Order instructing the parties to file a supplement brief regarding the effect of the September 30, 2012 decision in the related securities fraud class action, *City of Roseville Employees' Retirement System, et al., v. EnergySolutions, Inc., et al.*, Case No. 09-cv-8633 (the "Securities Class Action") pending in the United States District Court Southern District of New

York before the Honorable John G. Koeltl, that granted in part and denied in part defendants' motion to dismiss the Securities Class Action (the "Securities Order").

## I.   BACKGROUND OF THE SECURITIES CLASS ACTION

The lead plaintiffs in the Securities Class Action brought causes of action on behalf of a proposed class of acquirers of common stock of Energy*Solutions*, Inc. ("Energy*Solutions*" or the "Company") in or traceable to a November 14, 2007 initial public offering (the "IPO") or a July 24, 2008 offering (the "July 28 Offering"). The lead plaintiffs in the Securities Class Action alleged violations of section 10(b) of the Securities Exchange Act of 1933 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company, the Individual Class Defendants (defined below) and ENV Holdings, Inc. ("ENV"); sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act") against all defendants; and for control person liability under section 15 of the Securities Act and section 20 of the Exchange Act against the Individual Class Defendants and ENV. *Id.* at 23-24.

The twelve individual defendants named in the Securities Class Action are: R. Steven Creamer ("Creamer"); Philip O. Strawbridge ("Strawbridge"); Jean I. Everest II ("Everest"), current Vice Chairman of Energy*Solutions*' Board of Directors (the "Board"); Mark C. McBride ("McBride); Lance L. Hirt ("Hirt"); David B. Winder ("Winder"); Jordan W. Clements ("Clements"); Andrew S. Weinberg ("Weinberg"); Alan E. Goldberg ("Goldberg"); Robert D. Lindsay ("Lindsay"); and Robert J.S. Roriston ("Roriston") (collectively, the "Individual Class Defendants")[1]. Also named as defendants in the Securities Class Action are: Energy*Solutions*; ENV, Energy*Solutions*' sole shareholder at the time of the IPO; and the underwriters — Credit

---

[1] Creamer, Strawbridge, Everest, McBride, Hirt, Winder, Clements, Weinberg, Goldberg, Lindsay and Roriston are also named as defendants in the instant derivative action.

Suisse Securities (USA) LLC, J.P. Morgan Securities, Inc., and Morgan Stanley & Co. Inc. involved in drafting and disseminating the false and misleading Registration Statements.

The Securities Class Action arises out of the same circumstances and events as alleged in Plaintiff's Amended Complaint. Specifically, lead plaintiffs allege, *inter alia*, that the 2007 IPO and July 2008 Offering Registration Statements (collectively, the "Registration Statements") and other statements made by the defendants contained false or misleading statements or omitted material facts related to: i) the impact of the Life-of-Plant ("LOP") contracts on waste disposal opportunities; b) opportunities in the shut-down nuclear reactor market; c) the viability of the Zion project; d) the likelihood that the Nuclear Regulatory Commission ("NRC") would allow the use of decommissioning trust funds for the disposal of large components and that Energy*Solutions* would obtain disposal contracts as a result; and e) the potential adverse effects of macro-economic conditions. *See* Securities Order at 9.

Defendants moved to dismiss lead plaintiffs' consolidated complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As explained in additional detail below, on September 30, 2011, Judge Koeltl denied in part and granted in part defendants' motion to dismiss.

## II.    THE SECURITIES CLASS ACTION ORDER

Under the strict standards of Federal Rule of Civil Procedure 9(b)[2] and the Private Securities Litigation Reform Act of 1955 ("PSLRA")[3], the court found that the lead plaintiffs in the Securities Class Action sufficiently pled alleged misrepresentations as to: 1) the LOP

---

[2] In contrast to the claims in the instant shareholder derivative action that are subject to the less rigorous pleading requirements of Fed. R. Civ. P. 8(a), the securities claims in the Securities Class Action are premised on allegations of fraud; thus, they must meet the heightened pleading requirements of Fed.R.Civ.P. 9(b).

[3] The PSLRA requires that a complaint alleging securities fraud must "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

3

contracts; 2) the opportunities in the shut-down market; and 3) the petition before the NRC[4]. The Court ultimately upheld section 10(b) of the Exchange Act and Rule 10b-5 causes of actions against the Company, ENV and the individual defendants, except as to defendants Winder and McBride and to Roriston to the extent that claims allege misrepresentations in the November 2007 Registration Statement; and upheld the sections 11 and 12(a)2 of the Securities Act claims against all defendants except those to the extent that it alleges failure to make disclosures required by Item 303; and upheld the claims of control liability pursuant to section 15 of the Securities Act and section 20 of the Exchange Act against the individual defendants and ENV. In general, the court found that the defendants who signed the Registration Statements "made" the false statements therein. *Id.* at 47. As a result, because they signed the Registration Statements, they were held to be proper defendants on the claims regarding the alleged misstatements contained therein. *Id.* at 43.

1. **The Misrepresentations Regarding the Impact of the LOP Contracts on Waste Disposal Opportunities were False.**

Quoting the Registration Statements, the Securities Order states the Registration Statements described the LOP contracts as arrangements under which ES had "agreed to process and dispose of substantially all [LLRW] and [MLLW] generated by 82 of the 104 operating nuclear reactors in the United States," along with, "ultimately[,] their D&D waste materials." Order at 27. The court held that the Securities Class Action plaintiffs had sufficiently alleged that the Registration Statements were misleading in light of the Company's omission to mention that the terms of the contracts made it highly unlikely that any waste not required to be disposed of by the contracts, including MLLW and D&D waste, would be disposed of until far in the future, due to the economic incentives created by the terms of the contracts. *Id.* In rejecting defendants' arguments to

---

[4] The Court held that lead plaintiffs did not sufficiently plead allegations as to the Zion project or macroeconomic conditions.

the contrary, the court ultimately held that the statements asserting that the LOP contracts would lead to the disposal of MLLW and D&D waste were false or omitted facts necessary to make the disclosures not materially misleading. *Id.* at 30. The court noted that:

> [a] reasonable investor could read the Registration Statements to suggest that ES would be disposing of substantially all MLLW and D&D waste material under the contracts. If in fact that was highly unlikely at the time of the Registration Statements due to present facts, such information would be material to investors and therefore needed to be disclosed to make the disclosures in the Registration Statements not misleading.
> *Id.* at 28.

### 2. The Misrepresentations Regarding the Opportunities in the Shut-Down Reactor Market were False

The court found that the Securities Class Action plaintiffs had sufficiently alleged that the statements asserting that ES believed itself to be well-positioned to obtain and perform decommissioning contracts with shut-down reactors were false or omitted facts necessary to make the disclosures not materially misleading. *Id.* at 33. The misleading statements were related to the identification of reactors which could contract with ES for its services. "If ES [Energy*Solutions*] did, in fact, know that the owners of at least two reactors -- accounting for roughly $550 million of the market identified in the Registration Statements -- had no interest in entering into a decommissioning contract with ES, then disclosure of this fact may have been necessary to accurately convey ES's chances of obtaining these contracts. It may well have been misleading to include these reactors in a list of prospects." *Id.* at 31.

### 3. Misrepresentations Regarding the Approval of the Petition before the NRC were False

The court found that the statements regarding the likelihood that the NRC would allow the use of decommissioning trust funds for the disposal of large components and that Energy*Solutions* would obtain disposal contracts as a result "plainly" survived the motion to dismiss. *Id.* at 37. The court specifically found that the statements made by defendants Strawbridge

5

and Creamer were "unmistakable" and that a reasonable jury could find they "did not actually hold the beliefs they espoused at the time of their statements..." *Id.* Further, the court found that Creamer, Everest, and Strawbridge acted with scienter because they were briefed on the allegedly misrepresented or omitted facts and attended meetings during which the rejection of the NRC petition was discussed. *Id.* at 50.

Notably, even without the explicit statements of confidence from Creamer and Strawbridge, the court held that the allegations about the Registration Statements themselves would survive the motion to dismiss as the Registration Statements gave no indication that the NRC had consistently rejected the exact policy change sought by the company and was virtually certain to reject the change again. *Id.* at 38-39.

### 4.    The Court Found that Defendants Acted with Scienter

In making its findings, the court found that Creamer, Everest and Strawbridge acted with scienter[5] and lead plaintiffs' allegations are specific to support a strong inference that Creamer, Everest and Strawbridge consciously misbehaved or were reckless in signing the Registration Statements and , in the case of Creamer and Strawbridge, making statements to the contrary of the information that they allegedly knew. *Id.* at 50. Furthermore, the court held that because scienter is properly alleged against three key officers of the Company who were also principals of ENV, scienter is properly alleged against the Company and ENV itself. *Id.* at 51.

Lastly, the court held that the lead plaintiffs sufficiently alleged scienter under a "motive and opportunity" theory[6] due to ENV's sale of more than $1.2 billion in the two offerings as evident of motive to defraud investors. *Id.* at 54. Specifically, the court noted that prior to the IPO, ENV

---

[5] Scienter may be inferred from: i) facts showing that a defendants had "both motive and opportunity to commit the fraud," or ii) facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007). The facts must give rise to a strong inference with regard to each defendant. *See Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron Inc.,* 741 F. Supp. 2d 474, 488 (S.D.N.Y. 2008).

[6] To prevail on a claim on this theory, plaintiffs "must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler,* 264 F.3d 131, 139 (2d Cir. 2001).

owned 100% of the 75.15 million shares of the Company.  The lead plaintiffs alleged that the Company, ENV and the Individual Defendants made misrepresentations and omissions so that they could sell more than 20 million shares of stock in the IPO for $463 million and over 40 million additional shares in the July 2008 Offering for an additional $764 million.  The total proceeds to ENV exceeded $1.2 billion which was then distributed to the individual defendants, through their interests in ENV, with the exception of McBride and Winder who did not have any interest in ENV. Lead plaintiffs allege that the defendants sold more than 80% of their Energy*Solutions*' holdings through the IPO and July 2008 Offering  which ultimately was an economic benefit that accrued to them as a result of their misleading statements.  *Id.* at 55.

## III.   EFFECT OF THE SECURITIES CLASS ACTION ORDER ON THE INSTANT DERIVATIVE ACTION

As set forth in detail in Plaintiff's Opposition to Defendants' Motion to Dismiss (the "Opposition") (Dkt. No. 40), Plaintiff's Amended Verified Shareholder Derivative Complaint (the "Complaint") asserted on behalf of Energy*Solutions,* raises reasonable doubt regarding the disinterestedness and/or independence of a majority of Energy*Solutions'* Board of Directors (the "Board"), rendering pre-suit demand in the above-captioned shareholder derivative action (the "Action") futile.  Furthermore, for the additional reasons set forth below, pre-suit demand is futile.  Accordingly, Defendants' Motion to Dismiss should be denied in its entirety.

### A.   Demand is Futile Because A Majority of Energy*Solutions'* Board Face a Substantial Likelihood of Liability

The Securities Order confirms that at least a majority of the Company's Board, *i.e.*, five out of nine directors[7], face a substantial likelihood of liability as a result of the false statements contained in the Registration Statements and because of the securities fraud claims pending

---

[7] Specifically, nine directors served on Energy*Solutions'* Board when this action was initiated Christensen (CEO and President), J. Barnie Beasley, Pascal Colombani, Steven R. Rogel, Whitman,  Winder,  Everest, II, Clare Spottiswoode  and de Planque, who has since passed away.

against the Company and its former largest shareholder, ENV.  In the interest of brevity, Plaintiff incorporates by reference Delaware's demand futility standards as set out in his Opposition and the corresponding arguments set forth therein demonstrating demand futility. Furthermore, for the additional reasons set out, demand is futile and defendants in the instant Action will be liable for breach of their fiduciary duties.

> **1.** **Christensen, Everest, Winder and de Planque Face a Substantial Likelihood of Liability for Signing the False Registration Statements**

Delaware courts have consistently held that "a 'substantial likelihood' of personal liability prevents a director from impartially considering a demand" under Delaware Court of Chancery Rule 23.1. *Seminaris* v. *Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).  A substantial likelihood of personal liability creates a disabling interest which prevents a director from impartially considering a demand. *Rattner v. Bizos*, 2003 WL 22284323, at *9 (Del. Ch. Sept. 30, 2003); *Seminaris* at 1354.  Furthermore, where the face of a complaint pleads a claim of breach of fiduciary duty "with sufficient particularity to permit the court to reasonably reach the required conclusion," the courts will conclude that defendants face a substantial likelihood of liability and the complaint will survive a motion to dismiss pursuant to Rule 23.1.  *Wood v. Baum*, 653 A.2d 136, 140-41 (Del. 2008); *In re Baxter Int'l*, 654 A.2d 1268, 1270 (Del. Ch. 1995).

As set forth in the Securities Order, Judge Koeltl held that those who signed the Registration Statements are liable for the false statements contained therein and sustained securities fraud claims against them, including derivative defendant Everest, as noted in further detail below.  Securities Order at 43.  As alleged in Plaintiff's Complaint, defendants in the derivative action, Christensen, Everest, Winder[8] and non-defendant de Planque (the "Signatory

---

[8] Winder signed only the July 2008 Registration Statement.

Directors") signed, *inter alia*, the false and misleading 2007 and/or 2008 Registration Statement. The Signatory Defendants knowingly or recklessly issued, or failed to correct, materially false and misleading statements that conflicted with facts known by them at that time about, among other things: (i) the value of the Company, its existing business relationships under the LOP Contracts and its prospects; (ii) the ability of the Company to access decommissioning trust funds; and (iii) the likelihood that the Company would obtain a favorable ruling from the NRC on the Petition. The Signatory Directors had a duty to ensure that the Registration Statements were true and accurate, that there were no omissions of material fact that would make the statements misleading, and that the documents contained all facts required to be stated therein.

Clearly, the Signatory Directors "made" the false statements contained therein and are liable for those false statements. Their acquiescence in signing and disseminating misleading financial statements "cannot be deemed to be the product of a valid exercise of business judgment," and "[t]o the extent that a Defendant violated his or her fiduciary duty by allowing others to make materially false or misleading statements about [a corporation's] financial matters . . . demand is excused." *In re Oxford Health Plans, Inc.*, 192 F.R.D. 111, 117 (S.D.N.Y. 2000) (applying Delaware law). As such, the Signatory Directors face a substantial likelihood of liability based on these false and misleading statements and their own self-interest would prevent them from considering objectively a demand upon the board. Thus, demand is futile as to Defendants Christensen, Everest, Winder and non-defendant de Planque.

> **2.    Demand Is Futile as to Defendant Everest Based On His Interest in ENV Holdings and Because Securities Fraud Claims Were Sustained Against Him**

Defendant Everest owned 5.37% of ENV Holdings during the Relevant Period. As noted in the Securities Order, defendants Creamer, Strawbridge, Everest, Goldberg, Hirt, Clements, Lindsay, and Weinberg (the "ENV Defendants") were highly motivated and knowingly sought to

9

issue these aforementioned materially false and misleading statements. ENV Defendants committed this fraud to make it appear to investors that the Company had strong existing business relationships and growth prospects to enable ENV Defendants to dispose of more than $1.2 billion worth of stock in the Company at artificially inflated prices through their interests in ENV Holdings. Indeed, Defendant Everest's 5.37% interest in ENV Holdings allowed him to indirectly receive proceeds of approximately *$61.4 million* as a result of the IPO and July 2008 Offering. Additionally, the Company used $6.9 million of the net proceeds of the IPO to make payments to members of the Company's management pursuant to provisions in their employment agreements, including a payment to Defendant Everest of $2.1 million.

Defendant Everest stood on both sides of the IPO and the July 2008 Offering, as he received personal financial benefits from these Offerings that were not received by shareholders. As such, Defendant Everest cannot render a disinterested decision on whether to pursue the derivative claims. Also, Defendant Everest faces a substantial threat of liability for breach of his fiduciary duty of loyalty. Since Defendant Everest has breached his fiduciary duty and is interested, any demand upon him would be futile.

> **3.    Securities Fraud Claims Have Been Sustained Against the Company Rendering the Board Incapable of Acting Impartially**

Under Delaware law, directors must be able to consider a shareholder demand "impartially." *Aronson v. Lewis,* 473 A.2d 805, 809 (Del. 1984). Where director conduct is the subject of a derivative action, "a question is rightfully raised over whether the board will pursue these claims with 100% allegiance to the corporation, since doing so may require that the board sue itself on behalf of the corporation." *Ryan v. Gifford,* 918 A.2d 341, 352 (Del. Ch. 2007). This case presents a highly unusual fact pattern in which a federal court has upheld claims of

securities fraud, *inter alia*, against senior management and the Company based on similar facts alleged in the Action.

Due to the Company's clear exposure to liability and the resulting massive damages inflicted on the Company as a result, the Company's entire Board lacks the independence needed to render a disinterested decision on whether to pursue the derivative claims. Since the directors are faced with defending securities fraud claims on their behalf and/or on the Company's behalf, it is impossible to see how the Board could act "impartially" in response to a shareholder demand. As aptly noted in *Strougo v. Carroll*, 1991 WL 9978, at *4 (Del. Ch. Jan 29, 1991), "common sense suggests that, at a board meeting at which plaintiffs demand might be considered, the defendant directors' interest in their own alleged wrongdoing would affect their decisions as to whether to sue their co-directors for the same alleged wrongs." To date, the Board has failed to bring derivative claims against the Signatory Directors and ENV Defendants and further failed in their duties by not requiring the disgorgement of improperly received personal profits. A shareholder demand is therefore excused.

## B.    Derivative Defendants Have Breached Their Fiduciary Duties

Here, the same facts demonstrating that demand was excused also provide a sufficient basis for sustaining Plaintiff's breach of fiduciary duty claims. "A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010). Plaintiff has sufficiently alleged that the defendants in the action breached their fiduciary duties of good faith and loyalty by disseminating false or misleading statements. *See, e.g., Taser*, 2006 WL 687033, at *10 (applying Delaware law); *see also Fina v. Calarco Corp.*, at *7.

Defendants in the derivative action, Creamer, Strawbridge, Everest, McBride, Winder, Goldberg, Hirt, Clements, Lindsay, and Weinberg, were also named as defendants in the

11

Securities Class Action and securities laws violations have been sustained against them. These Defendants, in conjunction with Christensen, Everest, Winder and non-defendant de Planque as noted above, breached their fiduciary duties. Each director and officer of the Company owed to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligation of fair dealing and failed to do so.

## IV.   CONCLUSION

Based on the foregoing and the reasons set out in his Opposition, Plaintiff Sanjay Israni respectfully requests that Defendants' Motion to Dismiss the Amended Verified Shareholder Derivative Complaint be denied in its entirety.

DATED: October 9, 2012

ANDERSON & KARRENBERG

*/s/ Jon V. Harper*
Thomas R. Karrenberg
Jon V. Harper

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

**LAW OFFICES OF MARC HENZEL**
Marc S. Henzel
273 Montgomery Avenue
Bala Cynwyd, PA 19004
Telephone: (610) 660-8000
Fax: (405) 660-8080
mhenzel@henzellaw.com

*Attorneys for Plaintiff*

12

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notice electronically to:

Bruce D. Angiolillo
bangiolillo@stblaw.com

Paul Sirkis
psirkis@stblaw.com

Jonathan K. Youngwood
jyoungwood@stblaw.com

Robert S. Clark
rclark@parrbrown.com

Christopher B. Sullivan
csullivan@swlaw.com

Jared C. Fields
jfields@swlaw.com


*/s/ Jon V. Harper*

13